## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

DONNA S. BROWN,

        Plaintiff,

v.

CAROLYN W.  COLVIN,
Acting Commissioner of Social Security,

        Defendant.

Case No.  14-CV-04064-DDC

## MEMORANDUM AND ORDER

Pursuant to 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under Title II of the Social Security Act, as amended.  Plaintiff has filed a Brief (Doc. 9) requesting judicial review of the Commissioner's decision.  The Commissioner filed her Response Brief (Doc. 12) and submitted the administrative record with her Answer (Doc. 6).  Because plaintiff filed a Reply Brief (Doc. 13), this matter is now ripe for decision.  Having reviewed the administrative record and the briefs of the parties, the Court reverses the decision of the Commissioner, orders that judgment be entered under the fourth sentence of 42 U.S.C. § 405(g), and remands the case to the agency for further proceedings consistent with this Order.

I.      **Procedural History and Factual Background**

Plaintiff applied for Social Security disability insurance ("SSD") benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, alleging disability beginning February 28, 2011. (R. 155)  The Commissioner denied plaintiff's application on August 22, 2011 (R. 91), and again

1

denied it upon reconsideration on January 23, 2012 (R. 101).  Plaintiff requested a hearing before

an Administrative Law Judge ("ALJ") on January 30, 2012.  (R. 110)  Following a hearing on

September 5, 2012, the ALJ denied plaintiff's application for SSD benefits, determining that

plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act (R. 8).  42

U.S.C. §§ 416(i), 423(d).

On May 15, 2014, the Appeals Council of the Social Security Administration denied

plaintiff's administrative appeal (R. 1), rendering the Commissioner's decision final.  Plaintiff

has exhausted her administrative remedies and now seeks judicial review of the final decision

denying her SSD benefits.

## II.    Legal Standards

### A.  Standard of Review

Section 405(g) of Title 42 of the United States Code grants authority to federal courts to

conduct judicial review of final decisions of the Commissioner and "enter, upon the pleadings

and transcript of the record, a judgment affirming, modifying, or reversing the decision . . . with

or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Judicial review of the

Commissioner's denial of benefits is limited, extending only to the issues:  (a) whether

substantial evidence in the record supports the factual findings; and (b) whether the

Commissioner applied the correct legal standards.  *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir.

2014); *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007); 42 U.S.C. § 405(g).  "If supported

by substantial evidence, the [Commissioner's] findings are conclusive and must be affirmed."

*Sisco v. U.S. Dept. of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993) (citing

*Richardson v. Perales*, 402 U.S. 389, 390 (1971)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lax*, 489 F.3d at 1084. It must be "more than a scintilla," but it need not amount to a preponderance. *Id.* While courts "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," they do not reweigh the evidence or substitute their judgment for the Commissioner's. *Id.* (citation and internal quotation marks omitted). But they do not accept "the findings of the Commissioner" mechanically or affirm those findings "by isolating facts and labeling them substantial evidence, as the court[s] must scrutinize the entire record in determining whether the Commissioner's conclusions are rational." *Alfrey v. Astrue*, 904 F. Supp. 2d 1165, 1167 (D. Kan. 2012) (citation omitted). When determining whether substantial evidence supports the Commissioner's decision, the courts "examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision." *Id.* (citation omitted). "'Evidence is not substantial if it is overwhelmed by other evidence, particularly certain types of evidence (*e.g.*, that offered by treating physicians) or if it really constitutes not evidence but mere conclusion.'" *Lawton v. Barnhart*, 121 F. App'x 364, 366 (10th Cir. 2005) (quoting *Frey v. Bowen,* 816 F.2d 508, 512 (10th Cir. 1987)).

A "failure to apply the proper legal standard may be sufficient grounds for reversal independent of the substantial evidence analysis." *Brown ex rel. Brown v. Comm'r of Soc. Sec.*, 311 F. Supp. 2d 1151, 1155 (D. Kan. 2004) (citing *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994)). But such a failure justifies reversal only in "appropriate circumstances"—applying an improper legal standard does not require reversal in all cases. *Glass*, 43 F.3d at 1395; *accord Lee v. Colvin*, No. 12-2259-SAC, 2013 WL 4549211, at *5 (D. Kan. Aug. 28, 2013) (discussing the general rule set out in *Glass*). Some errors are harmless, requiring no remand or further

consideration.  *See, e.g.*, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161–63 (10th Cir. 2012); *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004); *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

### B.  Disability Determination

Claimants seeking SSD benefits carry the burden to show that they are disabled.  *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (citation omitted).  In general, the Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Commissioner follows "a five-step sequential evaluation process to determine disability."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (discussing 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits)).  As summarized by our Circuit, this familiar five-step process is as follows:

> Step one requires the agency to determine whether a claimant is presently engaged in substantial gainful activity.  If not, the agency proceeds to consider, at step two, whether a claimant has a medically severe impairment or impairments. . . .  At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation.  If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [the claimant] from performing [the claimant's] past relevant work.  Even if a claimant is so impaired, the agency considers, at step five, whether [the claimant] possesses the sufficient residual functional capability [("RFC")] to perform other work in the national economy.

*Wall*, 561 F.3d at 1052 (citations and internal quotation marks omitted); *accord* 20 C.F.R. § 404.1520(b)-(g).  The claimant has the "burden of proof on the first four steps," but the burden shifts to the Commissioner "at step five to show that claimant retained the RFC to 'perform an

alternative work activity and that this specific type of job exists in the national economy.'"

*Smith v. Barnhart*, 61 F. App'x 647, 648 (10th Cir. 2003) (quoting *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). The analysis terminates if the Commissioner determines at any point that the claimant is or is not disabled. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

## III.   Discussion

The ALJ determined that plaintiff has the following "severe impairments:" fibromyalgia, degenerative disc disease of the lumbar spine, status-post decompressive laminectomy, asthma, obesity, and adult attention deficit disorder ("ADD"). (R. 10) But the ALJ concluded that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404." (R. 12) Instead, the ALJ determined that the record evidence supported a finding that plaintiff has the RFC:

> to perform sedentary work as defined in 20 CFR 404.1567(a) except that claimant can lift up to 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk up to two hours in an eight-hour day, and sit up to six hours in an eight-hour day. She can occasionally balance, climb, crouch and crawl, and she can frequently stoop and kneel. She must avoid concentrated exposure to extreme cold, heat, wetness, humidity, and excessive vibration. She must avoid moderate exposure to pulmonary irritants such as fumes, odors, dust, gases, and poorly ventilated areas. She must avoid hazards such as unprotected heights and machinery. The claimant can perform tasks involving simple to intermediate instructions.

(R. 14-15) The ALJ also found that plaintiff is unable to perform any past relevant work. (R. 20) But due to plaintiff's age, education, work experience, and RFC, the ALJ determined that plaintiff possessed skills that are "transferrable to other occupations with jobs existing in significant numbers in the national economy." (R. 20)

Plaintiff argues that the ALJ made five kinds of errors. She contends that: (1) the ALJ erred at step two of her sequential evaluation by concluding that plaintiff's anxiety, depression,

and dysthymic disorders were not severe impairments; (2) the ALJ failed to apply the correct legal standards when assigning weight to the record medical opinions; (3) the ALJ's assessment of plaintiff's credibility is not supported by substantial evidence; (4) plaintiff's RFC is a vague statement lacking the required function-by-function analysis; and (5) the ALJ erred at step five by relying on the Vocational Expert's response to a flawed hypothetical question.  The Court addresses each argument, in turn, below.

### A. Alleged Error No. 1:  The ALJ's Determination of Severe Impairments

Plaintiff argues that the ALJ erred at step two of her five-step sequential evaluation by determining that plaintiff's anxiety, depression, and dysthymic disorders were not severe impairments.  She contends that an impairment must be considered "severe" upon a de minimis showing that it has more than a minimal effect on her physical or mental ability to work.  According to plaintiff, the ALJ's failure to declare each of the three mental impairments severe is inconsistent with the medical evidence and thus produced an incorrect RFP.

Defendant notes, correctly, that step two of the sequential evaluation is a threshold determination intended only to eliminate groundless disability claims.  "In order to meet the burden of proof at step two, a claimant must demonstrate an impairment or combination of impairments that significantly limits the claimant's ability to do basic work activity."  *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997) (citing 20 C.F.R. § 404.1520(c)).  The step two analysis is described further in 20 C.F.R. § 404.1523 as follows:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that

you have a medically severe combination of impairments, we will determine that
you are not disabled (see § 404.1520).

An error at step two of the five-step sequence "is usually harmless when the ALJ, as
occurred here, finds another impairment is severe and proceeds to the remaining steps of the
evaluation." *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) (citing *Carpenter v.
Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ
reached the proper conclusion that [claimant] could not be denied benefits conclusively at step
two and proceeded to the next step of the evaluation sequence."); *Oldham v. Astrue*, 509 F.3d
1254, 1256-57 (10th Cir. 2007) ("We can easily dispose of . . . arguments which relate to the
severity of [claimant's] impairments. The ALJ . . . made an explicit finding that [claimant]
suffered from severe impairments. That was all the ALJ was required to do in that regard.
[Claimant's] real complaint is how the ALJ ruled at step five.")). This is so because the ALJ
must consider all medically determinable physical and mental impairments, severe or not, at
steps three through five. *See Grotendorst*, 370 F. App'x at 883; *see also* 20 C.F.R. § 404.1523;
20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments
of which we are aware, including your medically determinable impairments that are not severe
. . . when we assess your residual functional capacity.").

Here, at step two, the ALJ's analysis determined that plaintiff suffered from several
severe physical impairments as well as a severe mental impairment. (R. 10) This finding was
sufficient to advance the evaluation of plaintiff's SSD claim, including all severe and non-severe
impairments, to steps three through five. At step three, the ALJ considered the severity of all of
plaintiff's mental impairments, individually and in combination, and determined that they did not
meet or medically equal the severity of those listed in 20 CFR Part 404. (R. 12-14) The ALJ
based this determination on the medical evidence. (R. 12-14) And the RFC reflects the

limitations resulting from all of plaintiff's physical and mental impairments.  (R. 12-14)  Thus,

any error by the ALJ at step two was a harmless one.  *See Grotendorst*, 370 F. App'x at 883;

*Carpenter*, 537 F.3d at 1266; *Oldham*, 509 F.3d at 1256-57.

**B.  Alleged Error No. 2:  The ALJ's Evaluation of Medical Opinions**

Next, plaintiff argues that the ALJ failed to apply the correct legal standards when

assigning weight to the medical opinions in the administrative record.  She contends that the ALJ

erred by giving no weight to the opinion of treating physician, Dr. Dan Magee.  She also contests

the weights given to the medical opinions of:  (1) Dr. David Fritz, D.O.; (2) Dr. Carol Eades,

M.D.; (3) Dr. Scott Koeneman, Psy.D.; and (4) Dr. Stanley Mintz, Ph.D.

**1.  Standard for Evaluation of Medical Opinions**

The applicable regulations required the ALJ to consider all medical opinions.  *See* 20

C.F.R. § 404.1527(c).  They also required the ALJ to discuss the weight assigned to each

opinion.  *See id.* § 404.1527(e)(2)(ii) ("[T]he administrative law judge must explain in the

decision the weight given to the opinions of a State agency medical or psychological consultant

or other program physician, psychologist, or other medical specialist, as the administrative law

judge must do for any opinions from treating sources, nontreating sources, and other

nonexamining sources who do not work for us.").

"Medical opinions are statements from physicians and psychologists or other acceptable

medical sources that reflect judgments about the nature and severity of [a claimant's]

impairment(s) including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant]

can still do despite impairment(s), and [a claimant's] physical or mental restrictions."  20 C.F.R.

§ 404.1527(a)(2).  The regulations identify three types of "acceptable medical sources:"  (1)

treating sources, *i.e.*, medical sources who have treated or evaluated the claimant or have had "an

ongoing treatment relationship" with the claimant; (2) nontreating sources, *i.e.*, medical sources who have examined the claimant but lack an ongoing treatment relationship; and (3) nonexamining sources, *i.e.*, medical sources who render an opinion without examining the claimant. *See id.* § 404.1502; *Pratt v. Astrue*, 803 F. Supp. 2d 1277, 1282 n.2 (D. Kan. 2011). The Commissioner generally gives more weight to opinions from examining sources than to those rendered by nonexamining sources. 20 C.F.R. § 404.1527(c)(1). And the Commissioner generally gives more weight to treating sources because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.* § 404.1527(c)(2).

### a. Treating Sources

The Commissioner will give the medical opinion of a treating source controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must consider these two factors when determining whether a treating physician's medical opinion "is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (citation omitted). First, the ALJ must consider whether such an opinion is well-supported. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If it is, then the ALJ must "confirm that the opinion is consistent with other substantial evidence in the record." *Id.* And an ALJ "may decline to give controlling weight to the opinion of a treating physician where he articulate[s]

specific, legitimate reasons for his decision." *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (citation and internal quotation marks omitted).

The ALJ's inquiry does not end with a finding that a medical opinion deserves less than controlling weight. *See Krauser*, 638 F.3d at 1330; *Watkins*, 350 F.3d at 1300.

> Even if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned.

*Krauser*, 638 F.3d at 1330; *accord Watkins*, 350 F.3d at 1300-01. Unless the ALJ gives the treating source opinion controlling weight, it must evaluate the medical opinion in accordance with factors contained in the regulations. 20 C.F.R. § 404.1527(c); SSR 96-5p, 1996 WL 374183, at *1, 3. Those factors are

> (1) [the] length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (citation omitted); 20 C.F.R. § 404.1527(c)(2)-(6). After considering these factors, the ALJ must give reasons in the decision for "the weight [that the ALJ] ultimately assigns the [medical] opinion." *Watkins*, 350 F.3d at 1301 (citation and internal quotation marks omitted). But the ALJ need not apply a factor-by-factor analysis so long as the decision is "'sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight.'" *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting *Watkins*, 350 F.3d at 1300). When an ALJ completely

rejects an opinion of a treating source, the ALJ must state specific and legitimate reasons for the decision. *Watkins*, 350 F.3d at 1301.

An ALJ must give a treating physician's opinion substantial weight "unless good cause is shown to disregard it." *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 289-90 (10th Cir. 1995). "When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around." *Id.* at 290 (citation and internal quotation marks and alterations omitted). A reviewing court may reverse and remand a Social Security case when the ALJ has failed to apply the correct legal standards when weighing the opinion of a treating physician. *Id.* at 289. When an ALJ merely finds that a treating physician's opinion is not entitled to controlling weight but fails to state clearly how much weight is given to the medical opinion with good reasons for the weight assigned, "remand is required." *Krauser*, 638 F.3d at 1330.

But in other circumstances, the failure to address properly and weigh all opinions is subject to a harmless error analysis. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161-63 (10th Cir. 2012). "When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004). Consequently, absent inconsistencies between or among the medical opinions and the ALJ's RFC determination, any error in considering the opinions is harmless. *Keyes-Zachary*, 695 F.3d at 1161-62. And, where such inconsistencies exist, the courts may

> supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), [the court] could confidently say that no reasonable

administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.

*Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

### b. Nonexamining Sources

Evidence from nonexamining sources such as state agency physicians and medical experts is considered opinion evidence. 20 C.F.R. § 416.927(e). ALJs are not bound by nonexamining source opinions but must consider them, except for opinions about the ultimate issue of disability. *Id.* While the opinion of an agency physician who has never seen the claimant is generally entitled to little weight, the ALJ can accept the opinion of state agency physicians over that of treating physicians if the opinions of the state agency physicians are consistent with the evidence in the record. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *Barnhill v. Astrue*, 794 F. Supp. 2d 503, 516 (D. Del. 2011) (citing *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991)).

### 2. Analysis

Plaintiff argues that the ALJ erred by not giving weight to the medial opinion of plaintiff's treating physician, Dr. Magee, and in assigning weights to the medical opinions of four doctors—Dr. Fritz, Dr. Eades, Dr. Koeneman, and Dr. Mintz.

### a. Dr. Magee

The ALJ gave no weight to the medical opinion of plaintiff's treating physician, Dr. Dan Magee. (R. 19-20) Dr. Magee treated plaintiff from March 13, 2009 to August 9, 2012. (R. 385, 461) During that time, he treated plaintiff for a variety of physical and mental impairments, including fibromyalgia; recurrent nephrolithiasis; shoulder, neck, and back pain; kidney disease; fatigue; and adult ADD. (R. 352-96)

On November 1, 2011, Dr. Magee completed a small portion of a form titled "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)." (R. 440) The form requested Dr. Magee to opine about how plaintiff's "physical capabilities are affected by" her impairments. (R. 440) The form included a list of 12 work-related movements and instructed Dr. Magee to: "(1) Indicate your patient's ability to perform the activity; and (2) Identify the particular medical findings (e.g., physical examination findings, x-ray findings, laboratory test results, history, symptoms (including pain), etc.) which support your opinion regarding any limitations." (R. 440) Immediately below that instruction, the form warned in bold, capital letters: "It is important that you relate particular medical findings to any reduction in capacity; the usefulness of your opinion depends on the extent to which you do this." (R. 440) (bolding and all-caps style omitted).

Dr. Magee did not provide his opinion on nine of the 12 movements listed on the form. (R. 440) Instead, at the bottom of the first page, he wrote that he had "not observed [plaintiff] in any workplace situations other than deskwork. Her abilities to do above activities would be better appraised by physicians of Midwest Rehab where she was referred." (R. 440) On page two, Dr. Magee deferred to plaintiff's neurosurgeon for an opinion about her ability to twist, stoop, crouch, and climb. (R. 441) In response to a request for medical findings supporting plaintiff's limitations (which Dr. Magee did not identify), he just listed several of plaintiff's chronic conditions. (R. 441) But Dr. Magee did provide his opinion that plaintiff should avoid concentrated exposure to extreme cold, heat, wetness, and humidity, as well as moderate exposure to fumes, dust, gases, and other hazards. (R. 442) He also anticipated that plaintiff's impairments would cause her to miss work "more than three times a month" and require her to shift from sitting to standing or walking. (R. 441-42)

"'When an ALJ rejects a treating physician's opinion, he must articulate specific, legitimate reasons for his decision.'"  *Cowen v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008) (quoting *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004)); *see also Watkins*, 350 F.3d at 1301.  Here, the ALJ gave no weight to Dr. Magee's opinion because he "opined that the claimant has many chronic conditions that would affect her ability to work; however, Dr. Magee did not provide an opinion on the claimant's ability to perform lifting, carrying, sitting, standing, walking, or the need to lie down."  (R. 19)  The ALJ explained:

> Though Dr. Magee is the claimant's long time treating physician, the record shows that he only examined her a few times during the relevant period, and he was not comfortable providing a full opinion on her ability to function.  Based on this information, I give the opinion of Dr. Magee no weight.

(R. 19)

Plaintiff argues that Dr. Magee's limited responses on the medical opinion form require the ALJ to give weight to the opinion.  The Court disagrees.  For purposes of the Social Security Act, "[m]edical opinions are statements from physicians . . . that reflect judgments about the nature and severity of [a claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2).  A "true medical opinion" includes a physician's assessment of the nature and severity of the limitations *and* information about what activities a claimant may still perform.  *See Cowan*, 552 F.3d at 1182 (citing § 404.1527(a)(2)).  As the ALJ noted, Dr. Magee was plaintiff's "long time treating physician," but he refused to opine on plaintiff's ability to perform work-related activities.  (R. 19)  Dr. Magee's opinion also failed to list her medical findings for reductions in plaintiff's capacity, as instructed on the opinion form.  *See Stalford v. Colvin*, No. 12-4011-JWL, 2013 WL 872336, at *5 (D. Kan. March 8, 2013) (finding a physician's lack of explanation more significant "by the fact that the

form explained what was necessary, and highlighted the importance of that information, yet [the physician's] opinion was not responsive to the instructions or to the needs of the SSA.").

The ALJ stated specific reasons for rejecting Dr. Magee's vague and conclusory opinion. *See Watkins*, 350 F.3d at 1300; s*ee also* SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996) (requiring the ALJ's decision to give reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."). Because Dr. Magee, as the primary treating physician, failed to opine on almost all of plaintiff's physical limitations or remaining abilities, his opinion was not a true medical opinion, as § 404.1527(a)(2) defines that term. The ALJ thus did not err by assigning no weight to it.

Plaintiff also argues that the ALJ erred by rejecting Dr. Magee's opinion because he examined plaintiff only a "few times" after her alleged disability onset date. Plaintiff is correct. This is one relevant factor to deciding the weight to assign a treating physician's opinion. *See Watkins*, 350 F.3d at 1301; 20 C.F.R. § 404.1527(c)(2)-(6). But given the deficiencies in Dr. Magee's opinion, as discussed above, mentioning this factor without providing further analysis was a harmless error.

### b. Dr. Fritz

Dr. David Fritz treated plaintiff for back pain from April 1, 2009 to August 19, 2009. (R. 274-83) Dr. Fritz performed surgery on plaintiff's back on June 2, 2009. (R. 276) On August 19, 2009, he released plaintiff from his care and authorized her to return to work with no restrictions. (R. 273-74) The ALJ gave Dr. Fritz's opinion great weight, stating:

> [O]n August 19, 2009, David Fritz, D.O., the claimant's treating neurosurgeon released the claimant from his care and allowed her to return to work without restrictions (Exhibit 1F/3). I give this opinion great weight, as the claimant was released to work by Dr. Fritz and has not returned to him for further treatment.

15

(R.18)

Plaintiff argues that the ALJ erred in giving weight to Dr. Fritz's medical opinion for two reasons.  First, plaintiff asserts that the opinion is not relevant because it was issued eighteen months before the onset of her disability.  Second, plaintiff argues that the ALJ's RFC contains work-related restrictions that contradict Dr. Fritz's opinion.

As for plaintiff's first argument, the date of Dr. Fritz's opinion does not eliminate its relevance to the ALJ's evaluation.  Indeed, the ALJ must consider and weigh all medical opinions in the record.  20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive.").  This is a "'well-known and overarching requirement'" of all Social Security evaluations.  *Breckenridge v. Astrue*, No. 10-1327-SAC, 2011 WL 3847179, at *3 (D. Kan. Aug. 30, 2011) (quoting *Martinez v. Astrue*, 422 F. App'x 719, 724 (10th Cir. 2011)).  And medical opinions given before the alleged onset of disability are relevant to an ALJ's decision.  *See Hamlin*, 365 F.3d at 1215 ("[E]ven if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ.") (citing *Groves v. Apfel*, 148 F.3d 809, 810-11 (7th Cir. 1998); *Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 193 (1st Cir. 1987)).  Therefore, the ALJ was required to evaluate and weigh Dr. Fritz's medical opinion, even though it was given before the onset of plaintiff's alleged disability.

Plaintiff's second argument contends that the ALJ erred by giving great weight to Dr. Fritz's opinion because it is inconsistent with the RFC.  Two months after plaintiff's back surgery, Dr. Fritz determined that she was able to return to work without restriction.  (R. 273-74)  In contrast, the RFC includes several work-related physical limitations.  (R.14-15)  Plaintiff

contends that the weight given to Dr. Fritz's opinion is illogical and not supported by the RFC. Defendant argues that the ALJ gave the opinion great weight because it undermined plaintiff's credibility.

Contrary to plaintiff's contention, Dr. Fritz's opinion is not inconsistent with the RFC. The ALJ's decision explained, expressly, that it gave Dr. Fritz's opinion great weight because plaintiff "was released to work without restrictions by Dr. Fritz and has not returned to him for further treatment." (R. 18) Further, the ALJ cited the opinion in assessing the severity of plaintiff's back problems, stating, in relevant part:

> Furthermore, the claimant did well following her back surgery, and she has never returned to her surgeon since she was released to work without restrictions in 2009 (Exhibit 1F/3) . . . . In addition, Dr. Magee suggested that she return to her neurosurgeon; however, she has never returned to Dr. Fritz (Exhibit 23F/2). Based on this information, I find this impairment is not as severe as alleged.

(R. 17)

It is evident that the ALJ used Dr. Fritz's opinion to evaluate the credibility of plaintiff's alleged back problems.  This is proper use of a medical opinion contained in the record.  *See* 20 C.F.R. § 404.1529(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."); *see also Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988) (affirming credibility assessment when some of claimant's assertions were inconsistent with record medical evidence).  Indeed, following the RFC, the ALJ confirmed that it "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence." (R. 15)  The ALJ evaluated Dr. Fritz's medical opinion, applied it to plaintiff's testimony, and explained the

reason that it deserved great weight.  The Court thus finds no error in the weight given to the opinion.

### c.  Dr. Eades

The ALJ gave the medical opinion of reviewing physician, Dr. Carol Eades, great weight, stating:

> On January 23, 2012, Carol Eades, M.D., opined that the claimant can lift 20 pounds occasionally and 10 pounds frequently, stand or walk up to two hours in an eight hour day, sit up to six hour [sic] in an eight-hour day, occasionally climb, crouch and crawl, and frequently stoop and kneel.  Dr. Eades opined that the claimant should avoid concentrated exposure to extreme cold, vibration, fumes, odors, dust, gases and poor ventilation (Exhibits 4A; 22F).  I give this opinion great weight, as it is consistent with the medical record and the claimant's reports of her ability to perform activities of daily living.

(R. 19)  Plaintiff argues that the ALJ erred by not identifying the specific links between Dr. Eades's opinion, the medical record, and plaintiff's testimony.  She contends that the ALJ's conclusion that the opinion is consistent with the medical record and her ability to perform activities of daily living is not "sufficiently specific" to permit a meaningful review of the decision.

The ALJ described several of Dr. Eades' findings before assigning her opinion great weight.  (R. 19)  In doing so, the ALJ articulated her reasons for determining that Dr. Eades' opinion is consistent with the record medical evidence.  Specifically, the ALJ noted that Dr. Eades had determined that plaintiff could lift 20 pounds occasionally and 10 pounds frequently. (R. 19)  This finding is consistent with the opinion of reviewing physician Dr. C.A. Parsons (R. 19, 66), and does not conflict with the opinions of plaintiff's two treating physicians, Dr. Fritz (R. 18, 273-74) and Dr. Magee (R. 19-20, 440-43).  Next, Dr. Eades' opinion about plaintiff's ability to stand, walk, and sit (R. 19) is significantly more restrictive than Dr. Parson's opinion (R. 19, 66), and does not conflict with the treating physicians' opinions (R. 18, 19-20, 274, 440).

Finally, the record shows that Dr. Eades' conclusion that plaintiff should avoid exposure to environmental irritants is consistent with Dr. Magee's medical opinion (R. 19-20, 442), more restrictive than Dr. Parson's opinion (R. 19, 67-68), and does not conflict with Dr. Fritz's opinion (R. 18, 274).  The ALJ's evaluation is thus sufficiently specific for the Court to review and affirm that Dr. Eades' opinion was consistent with the medical record.

In contrast, the ALJ's decision fails to specify how Dr. Eades' opinion aligns with plaintiff's reported ability to perform activities of daily living.  The ALJ addressed plaintiff's testimony at step three of the sequential evaluation process, finding, in relevant part:

> In activities of daily living, the claimant lives with her husband.  She reported that she spends most of her day in bed, sleeping (Exhibits 5E/8; 18F/3).  She showers daily, and she appears at her appointments adequately dressed and groomed (Exhibits 5E/8; 6F/2; 18F/3); however, she reported that some days, she feels too depressed to perform her self-care routine (Exhibits 5E/8).  She is able to prepare meals, and she reported that she is only restricted by physical impairments when cooking (Exhibits 5E/9; 6F/3).  She also does laundry and dishes (Exhibits 5E/9; 6F/3).  The claimant reported during a January 2012 consultative examination that her husband now does most of the housework, shopping and cooking (Exhibit 18F/3).  The claimant continues to drive, and she was able to drive herself to a consultative examination (Exhibits 5E/10; 6F/2).  The claimant reported that she needs encouragement from her husband to complete her daily activities (Exhibit 5E/9 [sic]  Based on this information, I find the claimant has mild restrictions in this area.

(R. 12-13)  The ALJ's decision fails to reconcile this description of plaintiff's testimony with Dr. Eades' medical opinion.  It is unclear from the decision what, if any, aspect of plaintiff's activities of daily living correspond with Dr. Eades' work-related findings.  But because Dr. Eades' opinion is consistent with the entire medical record and plaintiff's RFC, the ALJ's failure to explain the specific links between the opinion and plaintiff's testimony is harmless error.  *See Keyes-Zachary*, 695 F.3d at 1161-62 (citing *Howard*, 379 F.3d at 947 ("When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened.")).

### d.  Dr. Koeneman

Dr. Scott Koeneman performed a mental status examination of plaintiff on June 22, 2011. (R. 18, 400)  Dr. Koeneman's exam "did not reveal the presence of psychological difficulties that would preclude [plaintiff] from obtaining and maintaining employment." (R. 18)  The ALJ's decision also recognized that Dr. Koeneman's exam found that plaintiff "appears capable of following and remembering simple instructions, making adequate work-related decisions, and sustaining her concentration on simple tasks over a normal eight-hour workday." (R. 18)  The ALJ gave this opinion great weight, finding that "the testing performed by Dr. Koeneman shows that claimant has adequate [mental abilities] to perform at least simple work tasks[,]" and that he "did not opine that the claimant could not perform intermediate tasks required of semi-skilled work." (R. 19)

Plaintiff argues that the ALJ's interpretation of Dr. Koeneman's opinion is reversible error.  She contends that Dr. Koeneman determined that she is capable of performing just simple tasks and instructions.  In plaintiff's view, the ALJ cannot extend Dr. Koeneman's findings to imply that she is "at least" capable of simple tasks or instructions.  If the ALJ truly gave the opinion great weight, plaintiff contends that she must be "disabled pursuant to Medical Vocational Guideline Rule 201.14.  20 C.F.R. Part 404, Subpart P, Appendix 2, §201.14."  Doc. 9 at 25.

The Court finds no error in the ALJ's interpretation of Dr. Koeneman's opinion.  It is the ALJ's duty to interpret all medical opinions and explain the weight given to each one.  20 C.F.R. § 404.1527(c).  Opinions about issues that may dispose of the disability determination are reserved for the Commissioner.  *See* 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the

requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart . . . or the application of vocational factors, the final responsibility for deciding those issues is reserved to the Commissioner.").  And "[t]he fact that an ALJ may prefer one medical opinion over another or may interpret a medical opinion such that the opinion is internally consistent does not mean that the ALJ has substituted his medical judgment for that of the medical source." *Bronson v. Astrue*, 530 F. Supp. 2d 1172, 1180 (D. Kan. Jan. 8, 2008).

Here, the ALJ stated, correctly, that Dr. Koeneman had determined plaintiff was capable of following simple instructions and maintaining concentration on simple tasks.  (R. 18)  And the ALJ was correct:  Dr. Koeneman did not opine that plaintiff was incapable of performing intermediate work-related tasks.  (R. 19)  While Dr. Koeneman's opinion did not say explicitly that plaintiff was able to perform "at least" simple tasks, the ALJ's finding was supported by the record medical evidence.  Notably, an independent consultative examiner, Dr. Stanley Mintz, opined that plaintiff was able to understand and follow both simple and intermediate instructions. (R. 19)  The ALJ's decision and the medical record thus support the ALJ's interpretation of Dr. Koeneman's opinion.

Next, plaintiff argues that the ALJ had a duty to develop the record if it found that Dr. Koeneman's opinion was ambiguous.  Plaintiff is correct that an ALJ must "fully and fairly develop the record as to material issues."  *Baca v. Dept. of Health & Human Servs.*, 5 F.3d 476, 479-80 (10th Cir. 1993).   But the Court can find no indication that the ALJ believed Dr. Koeneman's opinion was ambiguous.  Instead, the ALJ's decision describes Dr. Koeneman's conclusions succinctly, states the weight given to the opinion, and notes that it did not limit plaintiff to just simple tasks and instructions.  The Court cannot and will not create an ambiguity

where none exists, and it may not substitute its judgment for the Commissioner's. *See Lax*, 489 F.3d at 1084.

### e.  Dr. Mintz

Dr. Stanley Mintz, an independent consultative examiner, performed a mental status examination of plaintiff on January 5, 2012.  (R. 19, 451)  Dr. Mintz determined that plaintiff exhibited symptoms of mental illness, but they would not preclude her from employment.  (R. 19, 453)  Dr. Mintz concluded that plaintiff was able to understand simple and intermediate instructions.  (R. 19, 453)  The ALJ gave Dr. Mintz's opinion great weight because it was consistent with the opinion of Dr. Koeneman.  (R. 19)

Plaintiff contends that Dr. Mintz's finding that plaintiff is able to follow intermediate instructions is not consistent with Dr. Koeneman's opinion.  Plaintiff argues that the ALJ erred by not resolving this inconsistency before assigning great weight to Dr. Mintz's opinion.  The Court disagrees.  As discussed above, the ALJ's analysis of Dr. Koeneman's opinion reconciled any inconsistency between Dr. Mintz and Dr. Koeneman's opinions.  The ALJ performed this reconciliation as part of evaluating and interpreting the record medical evidence, and both opinions are consistent with the RFC.  Thus, the ALJ did not err in assigning weight to Dr. Mintz's opinion.

### f.  Conclusion

The Court concludes that the ALJ did not err, or committed only harmless error, in assigning weight to the five medical opinions described above.  Accordingly, plaintiff's argument on this point is denied.

### C.  Alleged Error No. 3:  The ALJ's Credibility Determination

Plaintiff challenges the ALJ's credibility determination on the ground that it is not supported by substantial evidence.  Plaintiff argues that the ALJ erred by finding her less credible because she did not attempt to find employment requiring only simple, routine, and repetitive tasks.  Plaintiff contends that if reduced to such work as suggested by the ALJ, it would require a finding that she was disabled under Medical Vocational Guideline 201.14. 20 C.F.R. Part 404, Subpart P, Appendix 2, §201.14.

A claimant's work history is one factor the ALJ must consider when evaluating the credibility of subjective statements about pain and other symptoms.  *See Campbell v. Barnhart*, 56 F. App'x 438, 441 (10th Cir. 2003) (citing 20 C.F.R. § 404.1529(c)(3)).  The ALJ also must consider:  (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken; (5) any treatment, other than medication, the claimant received; (6) any other measures used by the claimant to relieve its pain or symptoms; and (7) any other factors pertaining to the claimant's functional limitations that are caused by its pain or other symptoms.  20 C.F.R. § 404.1529(c)(3)(i)-(vii).

The ALJ's decision contains an extensive evaluation of plaintiff's credibility, as required by 20 C.F.R. § 404.1529.  (R. 15-18)  As part of that evaluation, the ALJ considered plaintiff's work history, explaining:

> In terms of the claimant's work history, the record shows that the claimant has a very consistent history of work prior to the alleged onset date (Exhibit 4D), and she stopped working at the time of the alleged onset date, due to symptoms of her impairments causing her to make mistakes at work (Exhibits 2E/3; 7E/4).  Each of these facts weighs in the claimant's favor regarding her motivation to work. However, the record does not show that the claimant attempted to return to work

at a position that would require performance of only simple, routine, repetitive tasks.

(R. 18)  The ALJ references plaintiff's certified earnings record (R. 174-75), her adult disability report (R. 181), and a work activities questionnaire completed by the human resources department of Shawnee County, Kansas (R. 225) as support for her analysis.  (R. 18)  The record confirms that plaintiff worked for 10 years before her alleged disability onset date.  (R. 225) Also, the record shows that plaintiff left her most recent employment before her onset date and has not attempted to secure replacement work.  (R. 181)  There is no evidence in the record that contradicts the ALJ's work history finding.  Accordingly, the finding is supported by substantial evidence.  *See Lax*, 489 F.3d at 1084.

Also, it is evident from the ALJ's decision that plaintiff's work history was but one of many factors considered in the credibility determination.  (R. 15-18)  The ALJ compared plaintiff's reports of pain and other symptoms with her testimony describing her daily activities (R. 18), history of medication (R. 16-17), medical treatment history (16-17), and other information in the record before determining that plaintiff was only "partially credible."  (R. 18) And contrary to plaintiff's contention, there is no indication that her failure to seek less skilled employment was given undue weight in the ALJ's credibility determination.  *See Campbell*, 56 F. App'x at 441 (affirming credibility assessment when "the ALJ did not place undue emphasis on plaintiff's work history, but considered it as but one of several factors bearing on her credibility.").  "'Credibility determinations are peculiarly the province of the finder of fact'" and should not be disturbed "'when supported by substantial evidence.'"  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)).  The Court finds that substantial evidence supports the ALJ's credibility determination.  The Court thus rejects plaintiff's argument on this point.

### D.  Alleged Error No. 4:  The ALJ's Residual Functional Capacity Assessment

Plaintiff next argues that the ALJ erred because her RFC assessment failed to comply with Social Security Ruling 96-8p ("SSR 96-8p").  Plaintiff contends that the ALJ's mental RFC is erroneous because it is "a vague statement that does not contain a mental function-by-function assessment of Plaintiff's abilities."  Doc. 9 at 29.  In support of her argument, plaintiff points to the introductory explanation of SSR 96-8p, which provides, in relevant part:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c) and (d) of 20 CFR 404.1545 and 416.945.  Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

(R. 28) (quoting SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996)).  Plaintiff notes that 20 C.F.R. § 404.1545(c) and § 416.945(c) list the mental functions that the ALJ must assess at step four:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis.  A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

Doc. 9 at 29 (quoting 20 C.F.R. §§ 404.1545(c), 416.945(c)).  Defendant never responds to this argument.

A claimant bears the burden of proving that her impairments prevent her from performing work performed in the past.  *Brown v. Comm'r of Soc. Sec. Admin.*, 245 F.Supp.2d 1175, 1186 (D. Kan. 2003) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).  But if the ALJ determines that the claimant is not disabled at step four, SSR 96-8p requires the ALJ "to make specific and detailed predicate findings concerning the claimant's RFC, the physical and mental

demands of claimant's past jobs, and how those demands mesh with the claimant's particular

exertional and nonexertional limitations." *Id*. (citations omitted).  The policy interpretation

section of SSR 96-8p provides, in relevant part:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator in the case record must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

The ALJ determined that plaintiff has the mental RFC to "perform tasks involving simple

to intermediate instructions."  (R. 15)  Before reaching this decision, the ALJ analyzed all of

plaintiff's mental impairments, in detail, at steps two and three of the five-step sequential

evaluation.  At step two, the ALJ described plaintiff's testimony about her anxiety, depression,

and dysthymic disorder and then compared that testimony to the record medical evidence.  (R.

11)  Specifically, the ALJ's step two analysis found, in relevant part:

> Though claimant alleged that these impairments are disabling, the record shows that she does not require mental health treatment, nor does she use any mental health medications.  She has not required a mental health hospitalization.  In addition, she is pleasant during treatment (Exhibits 4F/3; 6F/2; 10F/3; 18F/3), she displays no uncontrolled or unmanageable behaviors, and she demonstrated no evidence of suicidal or homicidal ideations, or psychotic symptoms (Exhibit 6F/2).  Finally, she stated that she was able to work previously with these impairments (Exhibit 6F/1).

(R. 11)

Step three required the ALJ to determine the extent that a mental impairment, or

combination of mental impairments, limited plaintiff's abilities across the following four

functional areas:  (1) activities of daily living; (2) social functioning; (3) concentration,

persistence, or pace; and (4) episodes of decompensation.  20 C.F.R. § 404.1520a(c)(3)

(referencing paragraph B of the adult mental disorders listings in 12.00 of the Listing of

Impairments).  The ALJ relied upon the record medical evidence at step three and, again,

performed a detailed assessment of plaintiff's mental impairments.  (R. 12-14)  Following her

step three assessment, the ALJ's decision includes the following paragraph:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p).  *Therefore, the following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.*

(R. 14) (emphasis added).

After describing plaintiff's RFC at step four, the ALJ discussed the medical opinions in

the administrative record.  (R. 18-20)  The medical evidence included four physicians who

opined on plaintiff's mental impairments.  (R. 18-20)  The ALJ gave great weight to Dr.

Koeneman's and Dr. Mintz's opinions.  (R. 18-19)  As discussed in the ALJ's decision, both

doctors concluded, independently, that plaintiff was capable of maintaining employment,

handling her own finances, and following simple to intermediate instructions.  (R. 18-19)  Also,

the ALJ's decision gave the medical opinions of Dr. McRoberts and Dr. Fantz little weight

because both had failed to acknowledge that plaintiff's adult ADD caused moderate limitations

in concentration, persistence, and pace.  (R. 19)

The ALJ performed a detailed analysis of the record at steps two, three, and four of the

sequential evaluation process.  Her decisional narrative evaluates the record evidence on

plaintiff's ability to understand and follow instructions, interact with authority figures and co-workers, and otherwise cope with the pressures of employment, as required by 20 C.F.R. § 404.1545(c) and § 416.945(c). The ALJ incorporated her analysis at steps two and three into the RFC. (R. 14)  And the RFC includes the mental limitations found by the ALJ during her evaluation of the record.  Thus, the Court finds that the RFC is supported by substantial evidence and satisfies the requirements of 20 C.F.R. § 404.1545, as interpreted by SSR 96-8p.

### E.  Alleged Error No. 5:  The ALJ's Hypothetical Question

Finally, plaintiff argues that the ALJ erred at step five by posing a flawed hypothetical question to the Vocational Expert ("VE").  Plaintiff contends that the hypothetical did not include all of the restrictions caused by plaintiff's mental impairments.  Specifically, she argues that the hypothetical was inconsistent with the ALJ's findings that plaintiff has mild difficulty in social functioning, mild difficulty with activities of daily living, and moderate deficiencies in concentration, persistence, or pace.

Plaintiff's argument relies on the Tenth Circuit's holding in *Wiederholt v. Barnhart*, 121 F. App'x 833 (10th Cir. 2005).  In *Wiederholt*, the ALJ determined that the claimant had a mental RFC "limited to simple, unskilled job tasks."  *Id.* at 839.  But the ALJ determined that claimant also had "mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, [and] moderate difficulties in maintaining concentration, persistence, or pace."  *Id.* (internal quotations omitted).  At step five of her sequential evaluation, the *Wiederholt* ALJ asked the VE a hypothetical question about the level of work a claimant, who has a mental RFC "limited to simple, unskilled tasks," could perform.  *Id.* (internal quotations omitted).  The VE responded that, based on the mental RFC described by the ALJ, the claimant could perform "unskilled light or sedentary work."  *Id.*  The ALJ relied on this response in her denial of

benefits.  *Id.*  The court held that the *Wiederholt* ALJ had committed reversible error, and

explained why:

> The relatively broad, unspecified nature of the description "simple" and
> "unskilled" does not adequately incorporate the ALJ's additional, more specific
> findings regarding Mrs. Wiederholt's mental impairments.  Because the ALJ
> omitted, without explanation, impairments that he found to exist, such as
> moderate difficulties maintaining concentration, persistence, or pace, the resulting
> hypothetical question was flawed.  Moreover, there is no evidence to suggest that
> the VE heard testimony or other evidence allowing her to make an individualized
> assessment that incorporated the ALJ's specific additional findings about Mrs.
> Wiederholt's mental impairments.  *Cf. Diaz v. Sec'y of Health & Human Servs.,*
> 898 F.2d 774, 777 (10th Cir.1990).  The VE's opinion that Mrs. Wiederholt could
> do unskilled light or unskilled sedentary work is therefore not substantial
> evidence to support the ALJ's decision.

*Id.*

The hypothetical question put to the VE in this case is quite similar to the *Wiederholt*

question.  Here, the ALJ determined that plaintiff has the mental RFC to perform "tasks

involving simple to intermediate instructions."  (R. 15)  The ALJ found that plaintiff also has

mild difficulty in social functioning, mild difficulty with activities of daily living, and moderate

deficiencies in concentration, persistence, or pace.  (R. 12-13)  But the ALJ's hypothetical to the

VE described a claimant who is limited mentally to "simple to intermediate instructions."  (R.

52)  As in *Wiederholt*, this limitation did not adequately incorporate the ALJ's more specific

findings about plaintiff's mental impairments.  *Wiederholt*, 121 F. App'x at 839.  And also like

*Wiederholt*, there is no evidence that the VE heard testimony or was given other evidence about

the ALJ's more specific mental findings.  *Id.*

The ALJ's failure to describe all of her mental findings resulted in an incomplete

hypothetical and thus prevented the VE from making a full, individualized assessment of

plaintiff's mental abilities.  To put it another way, asking an incomplete question may have

produced an inaccurate opinion.  The VE's opinion that plaintiff has work skills that are

transferable to other occupations thus is not substantial evidence supporting the ALJ's determination that plaintiff is "not disabled" at step five. *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (quoting *Ekeland v. Bowen*, 899 F.2d 719,724 (8th Cir. 1990) ("[T]estimony elicited by hypothetical questions that do not relate with precision all of claimant's impairments cannot constitute substantial evidence to support the Secretary's decision.")).

Based on this error, the Court remands the case to the ALJ for further proceedings.  On remand, the ALJ should present the VE with a complete description of plaintiff's physical and mental limitations.  Only then can the vocational expert's testimony serve as substantial evidence in support of (or against) the ALJ's decision.

## IV.    Conclusion

Based on the above analysis, the Court reverses and remands the Commissioner's decision.  Judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g), reversing the Commissioner's decision and remanding the case for further proceedings consistent with this Order.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Commissioner's decision denying plaintiff Social Security disability insurance benefits is **REVERSED** and judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) **REMANDING** the case to the agency for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

**Dated this 15th day of July, 2015, at Topeka, Kansas.**

**s/ Daniel D. Crabtree_____**
**Daniel D. Crabtree**
**United States District Judge**